# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | )  |
|---|---|
| IN RE: ASBESTOS LITIGATION | ) |
| | ) |
| RICKEY THORNE and | ) |
| BARBARA J. THORNE, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) C.A. No. 20-419-MN-SRF |
| | ) |
| CRANE CO., et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION[1]

### I. INTRODUCTION

Presently before the court in this asbestos-based personal injury action is Defendants'[2] joint motion to establish the applicable substantive law, in which Defendants argue that Iowa law should apply to this case.[3] (D.I. 47) Plaintiffs Rickey Thorne and Barbara J. Thorne ("Plaintiffs") counter that North Dakota law should apply. (D.I. 50) For the reasons that follow, Defendants' motion to establish substantive law is GRANTED; Iowa substantive law shall apply to the claims and defenses asserted by all parties in this action.

---

[1] The pending motion to establish the applicable substantive law is a non-dispositive motion that the court may resolve by Memorandum Opinion and Order pursuant to 28 U.S.C. § 636(b)(1)(A) and D. Del. LR 72.1(a)(2). *See Shaw v. Andritz Inc.*, C.A. No. 15-725-LPS-SRF, 2016 WL 7491809, at *1 n.1 (D. Del. Dec. 29, 2016).

[2] "Defendants" refers collectively to the remaining defendants in this action: Crane Co.; ITT, LLC; Johnson Controls, Inc.; and Metropolitan Life Insurance Company. All other defendants were dismissed on January 28, 2021. (D.I. 43; D.I. 44)

[3] The briefing on the pending motion is as follows: Defendants' opening brief (D.I. 48), Plaintiffs' answering brief (D.I. 50), and Defendants' reply brief (D.I. 51).

## II. BACKGROUND

### A. Procedural History

Plaintiffs initiated this action by filing a complaint in the United States District Court for the District of Delaware on March 25, 2020 on the basis of diversity jurisdiction under 28 U.S.C. § 1332. (D.I. 1 at ¶ 1) The complaint asserts various tort-based causes of action arising out of plaintiff Rickey Thorne's ("Mr. Thorne") alleged exposure to asbestos and products containing asbestos during his service in the United States Air Force from June 1971 to June 1974. (*Id.* at ¶¶ 16, 25–61) On January 6, 2021, the court entered a scheduling order, which set deadlines of April 8, 2021 for the submission of a choice of law status letter and September 3, 2021 for filing case dispositive motions. (D.I. 38 at ¶¶ 10, 12) On April 2, 2021, the parties submitted a joint status letter notifying the court of their dispute concerning the applicable substantive law. (D.I. 45) The court granted the parties' request to brief the issue. (4/5/2021 Oral Order) Briefing on the motion was completed on June 2, 2021. (D.I. 51)

### B. Facts

Mr. Thorne served in the United States Air Force from June 1971 to June 1974. (D.I. 1 at ¶ 26; D.I. 48, Ex. A at 11:25–12:5, D.I. 50, Ex. 1 at 97:13–16) After completing basic training in Texas, he was stationed at Minot Air Force Base in North Dakota, where he received additional training as a heating specialist. (D.I. 48, Ex. A at 12:6–13:19) In that role, Mr. Thorne testified that he maintained gas appliances, including stoves, hot water heaters, and furnaces, by performing tasks that included calibrating thermostats and maintaining pumps and pneumatic valves. (*Id.* at 14:6–15:16)

Shortly after being honorably discharged from the Air Force in June 1974, Mr. Thorne moved back to Iowa and began working for John Deere at a plant in Waterloo, Iowa. (D.I. 50,

2

Ex. 1 at 38:17–41:3) At John Deere, Mr. Thorne performed maintenance on valves and control equipment just as he had during his time in the Air Force. (*Id.* at 57:22–58:12) Although he did not take the lead in working on pumps at John Deere, he was often in close proximity to the pumps when he assisted the designated pump mechanics employed by the company. (*Id.* at 58:13–60:11) Mr. Thorne retired from John Deere in 2011. (*Id.* at 67:20–23)

Plaintiffs allege that Mr. Thorne was exposed to asbestos while serving in the Air Force in North Dakota and that he developed mesothelioma as a result. (D.I. 1 at ¶¶ 7, 16) Mr. Thorne was diagnosed with mesothelioma after undergoing a series of medical tests in Iowa, which revealed a growth on his thyroid and a dark spot on his lung. (D.I. 50, Ex. 1 at 71:3–8) He was subsequently treated for lung cancer, and further testing at the Mayo Clinic in Iowa City revealed that he had mesothelioma. (*Id.* at 71:9–25) With the exception of eight weeks of basic training in Texas, Mr. Thorne has lived and worked only in North Dakota and Iowa. (D.I. 48, Ex. A at 12:6–13:4; 97:13–23; D.I. 50, Ex. 1 at 10:24–11:14; 81:1–9)

### III. LEGAL STANDARD

"The conflict of laws rules to be applied by the federal court in Delaware must conform to those prevailing in Delaware's state courts." *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). "Delaware courts use a two-part test to determine which sovereign's law to apply when there is a conflict: first, the court determines whether there is an actual conflict of law between the proposed jurisdictions." *Bell Helicopter Textron, Inc. v. Arteaga*, 113 A.3d 1045, 1050 (Del. 2015). If a conflict exists, the court applies the "law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6" of the Restatement. *Id.* at 1051 (quoting Restatement (Second) of Conflict of Laws § 145(1)).

3

Under § 6 of the Restatement, the court considers the following factors based on the circumstances of the case: "(a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, (d) the protection of justified expectations, (e) the basic policies underlying the particular field of law, (f) certainty, predictability and uniformity of result, and (g) ease in the determination and application of the law to be applied." Restatement (Second) of Conflict of Laws § 6(2). In applying the § 6 principles to tort actions, the court considers the following non-exclusive "contacts": "(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered." *Travelers Indem. Co. v. Lake*, 594 A.2d 38, 47 (Del. 1991) (quoting Restatement (Second) of Conflict of Laws §145(2)).

## IV. DISCUSSION

### i. Whether An Actual Conflict Exists

The parties do not dispute the existence of an actual conflict between the laws of Iowa and North Dakota with respect to the issues in this case. (D.I. 48 at 1–2; D.I. 50 at 4–5) Under Iowa law, "[a] defendant in an asbestos action or silica action shall not be liable for exposures from a product or component part made or sold by a third party." Iowa Code Ann. § 686B.7(5). Plaintiffs assert that application of North Dakota law yields a different result and Defendants could remain liable for third party asbestos-containing components utilized with Defendants'

4

products.[4] (D.I. 50 at 4) In addition, North Dakota law places a statutory cap on the recovery of punitive damages, which must be proven by clear and convincing evidence of oppression, fraud, or actual malice. N.D. Cent. Code § 32-03.2-11.[5] By contrast, Iowa law places no statutory cap on the recovery of punitive damages, which must be proven by a preponderance of clear, convincing, and satisfactory evidence. Iowa Code Ann. § 668A.1. An actual conflict of laws has been demonstrated. Accordingly, the court proceeds to analyze whether Iowa or North Dakota "has the most significant relationship to the occurrence and the parties under the principles stated in § 6" of the Restatement. *Bell Helicopter*, 113 A.3d at 1051 (quoting Restatement (Second) of Conflict of Laws § 145(1)).

ii. **Choice of Law Analysis**

a. **The Place Where the Injury Occurred**

Defendants argue the place of injury factor favors applying Iowa law because Mr. Thorne's greatest asbestos exposures occurred in Iowa, his mesothelioma manifested in Iowa, and he was diagnosed with mesothelioma in Iowa. (D.I. 48 at 4–7) The parties acknowledge the disagreement among courts about whether the place where the injury occurred factor should be analyzed under an exposure approach or a manifestation approach. (D.I. 48 at 5–7; D.I. 50 at 6–9) *Compare Harding v. Proko Indus., Inc.*, 765 F. Supp. 1053, 1056–57 (D. Kan. 1991)

---

[4] Plaintiffs have not cited any authority for their assertion that under North Dakota law "Defendants would remain liable for the asbestos-containing components utilized with their products, even those that they did not manufacture, if certain elements are proven, such as Defendants' actual knowledge of the hazards associated with asbestos exposure." (D.I. 50 at 4–5) However, Defendants do not challenge Plaintiffs' assertions with respect to conflicts between Iowa and North Dakota law. (*See* D.I. 48; D.I. 51) Therefore, the court need not go further in determining whether a conflict of laws exists.

[5] Apparently, Plaintiffs raise this distinction to demonstrate an actual conflict exists, notwithstanding that North Dakota law regarding punitive damages is facially less favorable to Plaintiffs. (D.I. 50 at 5)

5

(exposure approach), *and Celotex Corp. v. Meehan*, 523 So. 2d 141, 146 (Fla. 1988) (same), *with Wyeth v. Rowatt*, 244 P.3d 765, 776–77 (Nev. 2010) (manifestation approach), *and Carlson v. 84 Lumber Co.*, 2011 WL 1373508, at *5–6 (R.I. Super. Apr. 7, 2011) (same). Under the exposure approach, "the place of injury is deemed to be the predominant state where the [plaintiff] was exposed to asbestos based on the record to date." *Leach v. A.W. Chesterton, Inc.*, No. 10C-08-150 ASB, 2011 Del. Super. LEXIS 629, at *22 (Super. Ct. Aug. 31, 2011); *see also Bunn v. ArvinMeritor, Inc.*, No. 09C-12-256 ASB, 2011 Del. Super. LEXIS 630, at *12 (Super. Ct. May 2, 2011). Under the manifestation approach, "the place of injury is the state where the slow-developing disease is first ascertainable,' because, 'until a slow-developing disease is detected, there is no legally compensable injury to sue upon.'" *Bunn*, 2011 Del. Super. LEXIS 630, at *12–13 (Super. Ct. May 2, 2011) (quoting *Wyeth*, 244 P.3d at 776–77).

The parties do not cite any published Delaware state court opinions performing a choice of law analysis in an asbestos-related personal injury case.[6] (*See* D.I. 48; D.I. 50; D.I. 51) Defendants cite *In re Asbestos Litig. (James Petroski)*, No. N10C-11-139 ASB (Del. Super. Ct. June 20, 2012) ("*Petroski*"), an unpublished order, as the only example of a Delaware state court performing a choice of law analysis in a personal injury case involving asbestos exposure in multiple jurisdictions.[7] (D.I. 48 at 5) According to *Petroski*'s choice of law analysis, the court should first "seek to determine where the greatest exposure occurred." (D.I. 48, Ex. C at 2–3) However, if that determination "is not feasible or if the record is unclear, the court will apply the

---

[6] Plaintiffs cite *In re Asbestos Litig.*, 929 A.2d 373, 379 (Del. Super. Ct. 2006), which acknowledges that "the choice of law analysis in many [asbestos exposure] cases will point in several directions depending upon a multitude of factors including, *inter alia*, the place(s) of exposure and the domicile(s) of the parties." (D.I. 50 at 6) However, the court did not perform a choice of law analysis because the issue before it was whether dismissal was proper based on forum *non conveniens*. *See In re Asbestos Litig.*, 929 A.2d at 378–79, 386 n.51.

[7] *Petroski* is attached as an exhibit to Defendants' brief. (D.I. 48, Ex. C)

6

law of the state in which the disease first manifested itself or, if that too is unclear" the law of the state where the disease was diagnosed. (*Id.* at 2–3)

Plaintiffs do not analyze *Petroski*. (D.I. 50) Without citation to a Delaware state court decision, however, Plaintiffs acknowledge that "Delaware trial courts have applied the manifestation approach to the place of injury analysis, finding that the 'place where the injury occurs is the place where the force set in motion by the act first takes effect on the person.'" (D.I. 50 at 8 (quoting Restatement (Second) of Conflict of Laws § 175, cmt. b. (1971)).

"A federal court sitting in diversity is required to apply the substantive law of the state whose laws govern the action." *Yurecka v. Zappala*, 472 F.3d 59, 62 (3d Cir. 2006) (citing *Robertson v. Allied Signal, Inc.*, 914 F.2d 360, 378 (3d Cir. 1990)). Delaware choice of law rules apply to the present motion, but the Delaware Supreme Court has not decided whether the exposure approach or manifestation approach controls the analysis of the place where the injury occurred. In the absence of such precedent, the court "must predict how [the Delaware Supreme Court] would resolve the issue." *Id.* (citing *Polselli v. Nationwide Mut. Fire Ins. Co.*, 126 F.3d 524, 528 n.3 (3d Cir. 1997)). To do so, the court must consider: (1) what the Delaware Supreme Court "has said in related areas; (2) the decisional law of the state intermediate courts; (3) federal cases interpreting state law; and (4) decisions from other jurisdictions that have discussed the issue." *Del. Tr. Co. v. Energy Future Intermediate Holding Co. LLC (In re Energy Future Holdings Corp.)*, 842 F.3d 247, 254 (3d Cir. 2016) (quoting *Illinois Nat. Ins. Co. v. Wyndham Worldwide Operations, Inc.*, 653 F.3d 225, 231 (3d Cir. 2011)).

The court finds it reasonable that the Delaware Supreme Court would apply the manifestation approach here for the same reasons the Special Master found it to be superior to the exposure approach in *Leach v. A.W. Chesterton, Inc. (In re Asbestos Litig.)*, No. 10C-08-150

7

ASB, 2011 Del. Super. LEXIS 629 (Super. Ct. Aug. 31, 2011) and *Bunn v. ArvinMeritor, Inc. (In re Asbestos Litig.)*, No. 09C-12-256 ASB, 2011 Del. Super. LEXIS 630 (Super. Ct. May 2, 2011).[8] In *Leach* and *Bunn*, two personal injury cases in Delaware Superior Court involving asbestos exposure, the Special Master concluded that the manifestation approach was "more consistent with the Restatement than the exposure-oriented approach," *Bunn*, 2011 Del. Super. LEXIS 630, at *12, particularly in light of § 175, which relates to wrongful death cases but notes that "the place where the injury occurs is the place where the force set in motion by the actor first takes effect on the person." Restatement (Second) of Conflict of Laws § 175 cmt. b. The Special Master also considered the manifestation approach to be easier to apply because "it is easier to establish the place where the plaintiff's injuries manifested themselves than to conduct a mini-trial on the duration and intensity of exposures to asbestos fibers." *Leach*, 2011 Del. Super. LEXIS 629, at *27; *see also* Restatement (Second) of Conflict of Laws § 6, cmt. j ("[C]hoice of law rules should be simple and easy to apply."). Lastly, the Special Master noted that the manifestation approach comports with the statute of limitations analysis mandated by the Delaware Supreme Court in personal injury cases because "until a slow-developing disease is detected, there is no legally compensable injury to sue upon." *Bunn*, 2011 Del. Super. LEXIS 630, at *12, 15 (quoting *Collins v. Pittsburgh Corning Corp. (In re Asbestos Litig.)*, 673 A.2d 159, 162 (Del. 1996)).

Accordingly, the court applies the manifestation approach to the case at bar. Mr. Thorne was diagnosed with and continues to receive treatment for his mesothelioma in Iowa, giving rise to Plaintiffs' claims in the instant suit. (D.I. 50, Ex. 1 at 70:25–75:25) Under the manifestation approach, as Plaintiffs admit, "Iowa [is] the place of injury because the asbestos to which Mr.

---

[8] The parties did not cite *Leach* or *Bunn*. (D.I. 48; D.I. 50; D.I. 51)

Thorne was exposed first took effect on Mr. Thorne in Iowa." (D.I. 50 at 8) Therefore, the court finds this factor favors the application of Iowa law. *See Bunn*, 2011 Del. Super. LEXIS 630, at *12–13 (quoting *Wyeth*, 244 P.3d at 776–77) ("[T]he place of injury is the state where the slow-developing disease is first ascertainable,' because, 'until a slow-developing disease is detected, there is no legally compensable injury to sue upon.").

### b. The Place Where the Conduct Causing the Injury Occurred

Defendants assert that this factor is neutral because the "exposures at issue . . . occurred in Iowa and North Dakota." (D.I. 51 at 5; *see also* D.I. 48 at 7) Plaintiffs argue this factor favors the application of North Dakota law because the allegations of Mr. Thorne's asbestos exposures in the complaint are limited to North Dakota.[9] (D.I. 50 at 9–10)

The court agrees with Plaintiffs and finds that this factor favors the application of North Dakota law. Defendants note that Plaintiffs have not relinquished any potential claims based on Mr. Thorne's asbestos exposures in Iowa and argue that Plaintiffs cannot preclude Defendants from raising defenses based on Mr. Thorne's asbestos exposures in Iowa. (D.I. 51 at 4, 7) Defendants repeatedly characterize Plaintiffs' position as being based on a "flaw in the initial premise" that the only exposures at issue are Mr. Thorne's exposures at Minor Air Force Base in North Dakota. (*Id.* at 4) Contrary to Defendants' characterization, Plaintiffs' complaint is limited to Mr. Thorne's alleged exposures to asbestos in North Dakota. (*See, e.g.*, D.I. 1 at ¶¶ 3, 16; *see also* D.I. 50 at 9) Moreover, Plaintiffs explicitly state in their answering brief that "Defendants named in this matter were so named because Mr. Thorne was exposed to their products while working at Minot Air Force Base only" and that "Mr. Thorne's alleged Iowa

---

[9] Plaintiffs also argue that the location where Defendants' products were manufactured or designed is irrelevant. (D.I. 50 at 9–10) Defendants and the court agree. (*See* D.I. 51 at 5)

9

exposures are only relevant to Defendants' defenses to Plaintiffs' claims." (D.I. 50 at 9) The limited nature of Plaintiffs' claims and the court's choice of law ruling do not preclude Defendants from raising a defense based on Mr. Thorne's asbestos exposures in Iowa.[10] However, "Plaintiffs have not alleged that Mr. Thorne was exposed to asbestos while working for John Deere in Iowa." (*Id.*)

### c. The Domicil, Residence, Nationality, Place of Incorporation and Place of Business of the Parties

Defendants argue this factor weighs in favor of applying Iowa law because Mr. Thorne has lived in Iowa for almost his entire life, his diagnosing and treating physicians are in Iowa, and Defendants are not incorporated in Iowa, although they may conduct business there. (D.I. 48 at 7) Plaintiffs admit that they currently reside in Iowa and that Iowa is not the principal place of business or state of incorporation for any Defendant. (D.I. 50 at 11) Nevertheless, Plaintiffs assert this factor is neutral and note again that their claims are based solely on Mr. Thorne's asbestos exposures in North Dakota. (*Id.*)

Mr. Thorne was born in Iowa. (D.I. 50, Ex. 1 at 10:24–11:1) Outside of the time he served in the U.S. Air Force from 1971 through 1974, there is no evidence in the record showing that Mr. Thorne resided anywhere other than Iowa, including when he was diagnosed with mesothelioma by doctors in Iowa. (*Id.* 38:17–41:3, 70:25–75:25, 90:24–91:7) Therefore, the court finds that this factor favors applying Iowa law.

---

[10] The parties fail to explain how the existence of such a potential defense impacts the choice of law issue currently before the court. (D.I. 48; D.I. 50; D.I. 51)

10

### d. The Place Where the Relationship, If Any, Between the Parties Is Centered

Defendants argue this factor is neutral because there is no relationship between the parties centered in North Dakota. (D.I. 48 at 8; D.I. 51 at 6) Plaintiffs argue this factor favors the application of North Dakota law. (D.I. 50 at 11) More specifically, Plaintiffs argue the relationship between the parties is centered in North Dakota because that is where Mr. Thorne was exposed to Defendants' products. (*Id.*)

In some personal injury cases in which the parties had no relationship other than the event during which the plaintiff was harmed, courts have found that the parties' relationship was centered in the location where the personal injuries occurred. *See, e.g., Turner v. Lipschultz*, 619 A.2d 912, 915 (Del. 1992) (noting that the only relationship among the parties in a tort case involving an auto accident was the site of the collision); *Lee ex rel. Lee v. Choice Hotels Int'l Inc.*, 2006 WL 1148737, at *2 (Del. Super. Ct. Mar. 21, 2006) (concluding that the relationship between the parties was centered in Indonesia, where the plaintiff had been injured). However, unlike the facts and circumstances in *Turner* and *Lee*, for the reasons discussed in section IV.ii.a, *supra*, the place of the injury here is Iowa, where Mr. Thorne's mesothelioma manifested. *See Lee*, 2006 WL 1148737, at *1 ("The most significant relationship test is a flexible doctrine which requires each case to be decided on its own facts.") (citing *Travelers*, 594 A.2d at 48). Plaintiffs fail to establish that the parties' relationship is centered in North Dakota simply by virtue of the fact that Mr. Thorne used Defendants' products in North Dakota. *Leach*, 2011 Del. Super. LEXIS 629, at *33–34; *Bunn*, 2011 Del. Super. LEXIS 630, at *19 (concluding that "[t]he decedent established no relationship with the defendants simply by using their products"). Because the record does not reflect that the parties had a relationship beyond Mr. Thorne's use of

Defendants' products, the court finds this factor neutral. *See Leach*, 2011 Del. Super. LEXIS 629, at *33–34; *Bunn*, 2011 Del. Super. LEXIS 630, at *19–20; *see also* Restatement (Second) of Conflict of Laws, § 145(2)(e) (directing courts to account for "the place where the relationship, *if any*, between the parties is centered" in applying the principles of § 6) (emphasis added).

### e. Interest Analysis

The most significant relationship test "does not authorize a court to simply add up the interests on both sides of the equation and automatically apply the law of the jurisdiction meeting the highest number of contacts listed in Sections 145 and 6" of the Restatement. *Travelers*, 594 A.2d at 48 n.6. In recognition of the fact that "Section 145 [of the Restatement] has a qualitative aspect," the court must evaluate the contacts "according to their relative importance with respect to the particular issue." *Id.* (quoting Restatement (Second) of Conflict of Laws, § 145). As the parties acknowledge, however, the place of injury contact "is often 'determinative'" because "there is a rebuttable presumption that the law of the place where the injury occurred should govern related personal injury litigation." *Bell Helicopter*, 113 A.3d at 1053 (quoting *Pallano v. AES Corp.*, 2011 WL 2803365, at *8 (Del. Super. July 15, 2011), and citing Restatement (Second) of Conflict of Laws § 146 (1971)); *Clinton v. Enter. Rent-A-Car Co.*, 977 A.2d 892, 895 (Del. 2009) ("For personal injury actions, the law of the state where the injury occurred is presumed to control unless another state has a more significant relationship.").

Despite the presumption in favor of applying the law of the place of where the injury occurred, Plaintiffs argue it should not be considered determinative in this case because Mr. Thorne's contact with Iowa was "fortuitous." (D.I. 50 at 9) "The place of injury is considered fortuitous when there is no other significant contact with the site other than the injury itself."

*Pallano*, 2011 WL 2803365, at *8 (internal citations and quotations omitted); *see also* Restatement (Second) of Conflict of Laws § 145, cmt. e (1971) (noting that in some situations "the place of injury will not play an important role in the selection of the state of the applicable law . . . for example, when the place of injury can be said to be fortuitous or when for other reasons it bears little relation to the occurrence and the parties with respect to the particular issue."). In support of their argument that Iowa is fortuitous as the place of injury, Plaintiffs assert: (1) Mr. Thorne's mesothelioma diagnosis in Iowa is the only connection with Iowa relevant to the issues raised in this case; (2) Plaintiffs' claims are limited to Mr. Thorne's exposure to asbestos during his time working at Minot Air Force Base in North Dakota; and (3) Mr. Thorne's exposures to asbestos in Iowa while he worked for John Deere are relevant only to Defendants' defenses. (D.I. 50 at 9)

Plaintiffs' argument that Iowa's status as the place of injury should be considered "fortuitous" is not persuasive in light of the fact that Mr. Thorne has lived and worked in Iowa for his entire life except for the four years he spent in the U.S. Air Force.[11] (*See* D.I. 50, Ex. 1 at 10:24–11:1, 38:17–41:3, 70:25–75:25, 90:24–91:7) As discussed in section IV.ii.c, *supra*, Plaintiffs' domicil is now and has long been in Iowa, which is also where he was diagnosed with and treated for mesothelioma; therefore, Iowa bears more than a "little relation" to the parties with respect to Mr. Thorne's mesothelioma. *See* Restatement (Second) of Conflict of Laws § 145, cmt. e.

---

[11] *See also Bell Helicopter Textron, Inc. v. Arteaga*, 113 A.3d 1045, 1053–1054 (Del. 2015) (analyzing whether the location of a plane crash as the place of injury was "fortuitous" and concluding that it was not because the victims "lived and worked" in Mexico, where the crash occurred).

The parties and the court agree that "the needs of the interstate and international systems"[12] and "the relevant policies of the forum"[13] are neutral in this case. (*See* D.I. 50 at 12; D.I. 51 at 6) With respect to the policies of the interested states at issue,[14] Defendants argue Iowa has an interest in protecting its residents; Plaintiffs argue North Dakota's policies will be undermined if the court applies Iowa law to this case.[15] (D.I. 50 at 12–13; D.I. 51 at 6–7) The court recognizes that Iowa and North Dakota have counterbalancing interests in having their respective tort laws apply here. However, the parties have not sufficiently argued any interest that could overcome the presumption in favor of applying the law of the place of injury, which the parties do not dispute is Iowa under the manifestation approach. Therefore, after considering the principles of § 6 of the Restatement, the court finds that Iowa law should apply.

## V. CONCLUSION

For the foregoing reasons, Defendants' motion to establish applicable substantive law is GRANTED. (D.I. 47) An Order consistent with this Memorandum Opinion shall issue.

This Memorandum Opinion is filed pursuant to 28 U.S.C. § 636(b)(1)(A), Fed. R. Civ. P. 72(a), and D. Del. LR 72.1(a)(2). The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Memorandum Opinion. Fed. R. Civ. P. 72(a). The objections and responses to the objections are limited to four (4) pages each.

---

[12] Restatement (Second) of Conflict of Laws § 6(2)(a).
[13] Restatement (Second) of Conflict of Laws § 6(2)(b).
[14] *See* Restatement (Second) of Conflict of Laws § 6(2)(c).
[15] With respect to the remaining interest factors of § 6, Plaintiffs concede "[n]one of the remaining factors render[] Iowa's interest in this case more significant than North Dakota." (D.I. 50 at 13)

14

The parties are directed to the court's Standing Order For Objections Filed Under Fed. R. Civ. P. 72, dated October 9, 2013, a copy of which is available on the court's website, www.ded.uscourts.gov.

Dated: July 1, 2021

Sherry R. Fallon
United States Magistrate Judge