IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE: ASBESTOS LITIGATION | ) |
| | ) |
| RICKEY THORNE and | ) |
| BARBARA J. THORNE, | ) |
| | ) |
| Plaintiffs, | ) C.A. No. 20-419-MN-SRF |
| | ) |
| v. | ) |
| | ) |
| CRANE CO., et al., | ) |
| | ) |
| Defendants. | ) |

**REPORT AND RECOMMENDATION**

**I.   INTRODUCTION**

Presently before the court in this asbestos-related personal injury action is a motion for summary judgment filed by Defendant Crane Co. (D.I. 55)[1] For the reasons that follow, the court recommends GRANTING Crane Co.'s motion for summary judgment.

**II.   BACKGROUND**

   **a. Procedural History**

Plaintiffs Rickey Thorne ("Thorne") and Barbara J. Thorne (collectively, "Plaintiffs") initiated this action by filing a complaint in the United States District Court for the District of Delaware on March 25, 2020, on the basis of diversity jurisdiction under 28 U.S.C. § 1332. (D.I. 1 at ¶ 1) Plaintiffs allege that Thorne developed mesothelioma as a result of his exposure to asbestos-containing materials, including those provided by Crane Co., during his service in the United States Air Force. (*Id.* at ¶¶ 16, 25-61; D.I. 60, Ex. 1 at 57:3-58:12) Plaintiffs assert

---

[1] The briefing for the present motion is as follows: Crane Co.'s opening brief (D.I. 56), Plaintiffs' answering brief (D.I. 60), and Crane Co.'s reply brief (D.I. 61).

claims for negligence, willful and wanton conduct, strict liability, conspiracy, concealment, misrepresentation, loss of consortium, and punitive damages. (D.I. 1)

Thorne was deposed on July 13, 2020. (D.I. 60, Ex. 1) Plaintiffs did not produce any other product identification witnesses for deposition. On July 1, 2021, the court issued a memorandum opinion establishing that Iowa substantive law shall apply to the claims and defenses asserted by all parties in this action. (D.I. 52) On September 3, 2021, Crane Co. filed the present motion for summary judgment. (D.I. 55)

### b. Facts

#### i. Minot Air Force Base

Thorne served in the United States Air Force from June 1971 to June 1974. (D.I. 1 at ¶ 26(a); D.I. 60, Ex. 1 at 11:25-12:5, 38:17-19) After completing basic training in Texas, he was stationed at Minot Air Force Base ("Minot") in North Dakota, where he received additional training as a heating specialist. (D.I. 60, Ex. 1 at 12:6-13:19) In that role, Thorne testified that he maintained gas appliances, including stoves, hot water heaters, and furnaces, by performing tasks that included calibrating thermostats and maintaining pumps and pneumatic valves. (*Id.* at 14:6-15:16, 16:6-17:3) Thorne's product exposure relevant to the moving Defendant arises from his work on valves. (*Id.* at 26:10-14) The work that Thorne performed on valves was either removal and replacement or repair by repacking leaking valves. (*Id.* at 16:23-24:25, 139:12-18, 143:25-144:22, 148:7-156:9)

Removing and replacing a valve required shutting down the system, removing external insulation with a knife from the pipe and flanges leading to the valve, unbolting the valve, cleaning both ends of the flange with wire brushes and a die grinder and removing the old gaskets. (*Id.* at 16:23-21:11) The new flange gaskets were sometimes fashioned from sheet

2

metal using gasket cutters or a utility knife. (*Id.* at 25:13-26:9) Thorne believes the gasket and packing material was manufactured by Garlock. (*Id.* at 23:20-24:25, 26:3-9)

Repair of a leaking valve involved removal of the insulation from the pipelines and from any joints or unions. (*Id.* at 22:1-6) Thorne used a pick to dig out the old packing and then used an air hose to blow out packing remnants. (*Id.* at 22:3-23:10) He described the packing as rope shaped. (*Id.*) Thorne identified Garlock as the manufacturer of the replacement rope packing which he believed contained asbestos. (*Id.* at 23:21-24:25) Thorne cut pieces of replacement packing, affixed them around the valve stem, put down the bonnet and pressed it down with a packing nut to force it to hold. (*Id.* at 22:7-18) After repacking the valve, the pipe insulation was replaced and covered with thin sheet metal. (*Id.* at 25:4-26:2) The unions were covered with a mixture of dry asbestos powder and water to form a paste that was applied and covered with cheesecloth. (*Id.* at 150:9-155:1)

Thorne identified Crane Co. as one of four manufacturers of valves used at Minot. (*Id.* at 26:10-27:24) He could not estimate what percentage of his time was spent working on valves. (*Id.* at 28:1-22) He could not say how frequently he made repairs to Crane Co. valves in the winter months or in the warmer weather months when the system was shut down for general maintenance. (*Id.*) He had no knowledge of the age of the Crane Co. valves, or the number of times they were repaired or maintained, if any, before he performed work on them. (*Id.* at 165:15-166:17) He did not identify Crane Co. as the manufacturer, seller or supplier of pipe insulation, rope packing, or gasket materials. (*Id.* at 23:20-24:25, 26:3-9)

In their answering brief, Plaintiffs state that "[n]ew gaskets were occasionally purchased from the manufacturer." (D.I. 60 at 3) However, Plaintiffs' reference to Thorne's deposition

3

testimony is inaccurate, and the passage cited by Plaintiffs relates to pumps and has nothing to do with Crane Co. valves.[2]

### ii. John Deere

Shortly after being honorably discharged from the Air Force in June 1974, Thorne began working for John Deere at a plant in Waterloo, Iowa. (*Id.* at 38:17-41:3, 134:20-22) Thorne testified that John Deere had steam heating. (*Id.* at 56:15-25) A crew maintained the boiler plant but once the steam left the boiler plant, Thorne's responsibility was to maintain the control equipment, condensate pumps, steam traps and steam valves. (*Id.*) He explained his work on valves was the same as he performed at Minot except that penetrating oil was used to remove rusty bolts so the old gaskets could also be removed. (*Id.* at 57:3-58:5)

Crane Co. included in its opening brief Thorne's work history at John Deere. (D.I. 56 at 1-7) However, Plaintiffs do not address in their answering brief Thorne's alleged asbestos exposure anywhere other than at Minot. (D.I. 60) Therefore, for purposes of its recommendations on the pending motion, the court confines Thorne's relevant exposure history to his work on Crane Co.'s valves only at Minot from 1971 to 1974.

## III.  LEGAL STANDARD

### a. Summary Judgment

When jurisdiction is based upon diversity, the District Court applies the Federal Rules of Civil Procedure. *See Schmigel v. Uchal*, 800 F.3d 113, 119 (3d Cir. 2015). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material

---

[2] The passage is recited as follows:
> Q. "Where did you get the new gasket material that you used for the pump's housing gasket?"
> A. "A lot of times, we bought them, you know, from the – you know, the manufacturer or whatever. We – sometimes – because there were smaller pumps and they're generally the same kind, I guess, we would try to keep a stock." (D.I. 60, Ex. 1 at 33:8-15)

fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that could affect the outcome of the proceeding, and "a dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the non-moving party." *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

The moving party bears the initial burden of proving the absence of a genuinely disputed material fact. *See Celotex*, 477 U.S. at 322. The burden then shifts to the nonmoving party to demonstrate the existence of a genuine issue for trial, and the court must view the evidence in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co.*, 475 U.S. at 587; *Williams*, 891 F.2d at 460-61; *Scott v. Harris*, 550 U.S. 372, 380 (2007). An assertion of whether or not a fact is genuinely disputed must be supported either by citing to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B).

To defeat a motion for summary judgment, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment;" rather, there must be enough evidence to enable a jury to reasonably find for the non-moving party on the issue. *Anderson*, 477 U.S. at 247-49 (emphasis omitted). "If the evidence is merely colorable, or is not

significantly probative, summary judgment may be granted." *Id.* at 249-50 (internal citations omitted); *see also Celotex*, 477 U.S. at 322. If the non-movant fails to make a sufficient showing on an essential element of their case on which they bear the burden of proof, then the movant is entitled to judgment as a matter of law. *See Celotex*, 477 U.S. at 322.

The court has determined that Iowa substantive law applies to the claims and defenses asserted by all parties in this action. (D.I. 52)

## IV. DISCUSSION

### a. Iowa's Statue of Repose

Thorne's cause of action is not time-barred under Iowa's statute of limitations regarding personal injuries caused by an asbestos-containing product, Iowa Code § 614.1(2A),[3] unless Iowa's statute of repose, Iowa Code § 614.1(11), bars Plaintiffs' claims.

Iowa's statute of repose provides:

> …an action arising out of the unsafe or defective condition of an improvement to real property based on tort…and founded on…injury to the person or wrongful death, shall not be brought more than fifteen years after the date on which occurred the act or omission of the defendant alleged in the action to have been the cause of the injury or death.

Iowa Code § 614.1(11).[4]

---

[3] Iowa Code § 614.1(2A) provides that a personal injury action brought against the manufacturer of an alleged defective product "shall not be commenced more than fifteen years after the product was first…installed for use." But, subsection (2A)(b)(1) provides the exception that the fifteen-year limitation "shall not apply to the time period in which to discover a disease that is latent and caused by exposure to a harmful material, in which event the cause of action shall be deemed to have accrued when the disease and such disease's cause have been made known to the person or at the point the person should have been aware of the disease and such disease's cause." However, "[t]his subsection shall not apply to cases governed by subsection 11 of this section," meaning that a claim may still be barred by the statute of repose if it is not barred by the statute of limitations.

[4] The statute of repose was subsequently amended in 2017 to replace the phrase "fifteen years" with "the number of years specified below" and to add specific repose periods for various categories of real property. However, the amendment does not alter the statute of repose for the pending claim which is subject to the fifteen year period because Thorne's alleged exposure history occurred between 1971-1974. *See* Iowa Code § 614.1(11) (2017) (noting "[t]his section,

6

Plaintiffs' action was filed on March 25, 2020. (D.I. 1) Therefore, the statute of repose operates to bar Plaintiffs' claims to the extent they are based on the unsafe or defective condition of an improvement to real property and the acts or omissions of a Defendant alleged to have caused the injury occurred prior to March 25, 2005.

The dispositive issue is whether Thorne's work on the valve's component parts caused his alleged injuries in the course of an ordinary repair not subject to the statute of repose. *See Krull v. Thermogas Co. of Northwood, Iowa, Div. of Mapco Gas Prods.*, Inc., 522 N.W. 2d 607, 611 (Iowa 1994). Plaintiffs argue that the facts of this case involve ordinary repairs. (D.I. 60 at 7-10) Plaintiffs contend that Thorne's injuries occurred after the component part was permanently detached from the real property and had no further use as an improvement rendering it "useless scrap." (*Id.*)

The leading case on Iowa's statute of repose is *Kinseth v. Weil-McLain*, 913 N.W. 2d 55 (Iowa 2018), in which the Iowa Supreme Court favorably cited to the trial court's ninety-eight page decision addressing multiple defendants' summary judgment motions, including the trial court's statute of repose analysis that was not the subject of the appeal. *See Kinseth v. Weil-McLain*, 913 N.W. 2d 55, 64, 75 (Iowa 2018); *see Kinseth v. A.Y. McDonald Indus., Inc., et al.*, Wright County, Iowa District Court No. LACV022887, at *30 (October 11, 2010) (unpublished); (D.I. 60, Ex. 7) The Iowa Supreme Court applied the trial court's analysis of the statute of repose to the issue on appeal concerning whether the trial court properly excluded a valve manufacturer on the allocation-of-fault verdict form. *Kinseth*, 913 N.W. 2d at 75-77. The court held that the plaintiffs did not have a viable claim against the valve manufacturer because "[a]ny

---

as amended by Acts 2017 (87 G.A.) ch. 64, S.F. 413, does not apply to an improvement to real property in existence prior to the effective date of this Act [July 1, 2017]...").

exposure to asbestos during the refurbishment process…is not compensable under the statute of repose and thus cannot be grounds to include [the valve manufacturer] as a responsible third party" on the allocation-of-fault verdict form. *Kinseth*, 913 N.W. 2d at 76. The court agreed with the trial court's reasoning that "once a fixture had been installed, it constituted an improvement to real property" and, "[a]ccordingly, any exposure to asbestos while *removing* boilers or other fixtures arose out of an improvement to real property and was barred by the statute of repose." *Kinseth*, 913 N.W. 2d at 64, 75 (emphasis in original). Likewise, the court agreed that "once a component part, such as a valve, becomes part of an improvement to real property, it does not lose its status as an improvement once it is detached and refurbished." *Id.* at 75. The court distinguished removal and repair from installation of a fixture, finding that "any exposure to asbestos while *installing* boilers or other fixtures was not barred" by the statute of repose. *Id.* (emphasis in original).

The trial court in *Kinseth* provided a thorough review of all prior rulings of the Iowa courts interpreting "an improvement to real property" within the meaning of the statute of repose. (D.I. 60, Ex. 7); *Kinseth*, Iowa District Court No. LACV022887, at *30. First, in *Krull v. Thermogas Co.,* the Iowa Supreme Court ruled that a gas furnace control valve on an exploding furnace qualified as an improvement to real property because it: "(1) enhanced the home's value, (2) involved the expenditure of labor or money, and (3) was designed to make the home more useful or valuable." *Krull*, 522 N.W. 2d at 612.

Subsequently, the Iowa Supreme Court in *Buttz v. Owens-Corning Fiberglas Corp.* considered whether the definition in *Krull* applied to an asbestos containing product. *Buttz v. Owens-Corning Fiberglas Corp.*, 557 N.W. 2d 90 (Iowa 1996). In *Buttz,* the plaintiffs alleged injuries due to exposure to asbestos dust during the application of insulation products that

8

became attached to steam lines, boilers, and other parts of the building at plaintiffs' worksite. *Id.* at 91-92. The court ruled that under the *Krull* definition, the insulation products *in their unattached state* were not permanent additions to or betterment of real property, thus, they could not be considered "improvements" and the statute of repose was not applicable to bar the plaintiffs' claims. *Id.* at 92 (emphasis added).

However, a year later, in *Tallman v. W.R. Grace & Company-Conn.,* the Iowa Supreme Court adopted a "bright-line test" as the standard for determining whether an asbestos product had become an improvement. *Tallman v. W.R. Grace & Company-Conn.*, 558 N.W. 2d 208, 210-211 (Iowa 1997). The product at issue was spray fireproofing applied to structural steel and other building surfaces. *Id.* at 209. The plaintiff, an electrician, alleged that he "breathed asbestos dust…when the excess product fell from the ceiling support wires and when he removed it from inside of electrical boxes" during the wiring process. *Id.* The court ruled that plaintiff's claim was time-barred under the statute of repose because it was undisputed that the fireproofing product had become physically attached to the building at the time the plaintiff was exposed to the excess product and, thus, it was an improvement within the meaning of the statute. *Id.* at 210-211.

In *Harder v. ACandS,* the Eighth Circuit Court of Appeals held that an asbestos containing product that had once been attached to the property but was temporarily detached at the time of the plaintiff's alleged exposure did not lose its status as an improvement to real property. *Harder v. ACandS*, 179 F.3d 609, 613 (8th Cir. 1999). The product was a thermal insulation blanket originally attached to a steam turbine at a power plant. *Id.* at 611. The plaintiff removed the thermal insulation blankets for overhauling the turbine as part of general maintenance. *Id.* The plaintiff alleged he breathed asbestos dust after the blankets were

9

removed and while cleaning the floor where the blankets were stored after removal. *Id.* The Eighth Circuit reversed the trial court, which found that the blankets lost their status as improvements while they were temporarily detached. *Id.* The Eighth Circuit ruled that reviving liability "long after it has expired based on the improvement's temporary detachment is contrary to Iowa's 'legislative policy decision to close the door after fifteen years on certain claims arising from improvements to real property.'" *Id.* at 613 (quoting *Bob McKiness Excavating & Grading, Inc. v. Morton Buildings, Inc.*, 507 N.W.2d 405, 409 (Iowa 1993)). Furthermore, the court did not think that the Iowa Supreme Court "would gut Iowa's statute of repose in this way." *Id.*

After carefully examining the evolution of the caselaw interpreting an improvement to real property under Iowa's statute of repose, the court in *Kinseth* held that the statute of repose barred the plaintiffs' claim arising from asbestos exposure during the refurbishing of pumps that required removal of old asbestos gaskets and replacement with new ones. (D.I. 60, Ex. 7 at 17-25, 29-34) The plaintiffs argued that their claim against the pump manufacturer fell outside of the scope of the Iowa statute of repose because: "(1) [the] injury occurred during the course of an 'ordinary repair,' (2) to a component part that had been rendered scrap, no longer enhancing the value of the real property, and, perhaps more importantly (3) the component part causing injury had been permanently detached from the real property at the time the injury occurred." (*Id.* at 29) The court disagreed, finding that the pumps had been physically attached to the real property for the requisite time period before the exposure during refurbishment. (*Id.* at 29-31) The detachment of the component part does not cause it to lose its status as an improvement once it is detached and later repaired or refurbished. (*Id.*) "To rule otherwise would gut the policy of the

10

statute of repose…and expose the manufacturers of component parts, such as valves, to potential perpetual liability." (*Id.* at 33); *see Harder*, 179 F.3d at 613.

Plaintiffs in the instant case reassert the same arguments that the court rejected in *Kinseth* for the reasons stated, *supra*. (D.I. 60 at 7-10, Ex. 7 at 29) Here, the Plaintiffs assert that the old gasket material is waste that does not enhance the value of real property, and Thorne's injuries occurred after the gasket was permanently removed. (*Id.*) The court recommends following *Kinseth* in holding that once Crane Co. valves were attached and used as part of a properly working hot water heating system, the valves "were permanent additions to or betterment of real property that enhanced the property's capital value." (D.I. 60, Ex. 7 at 30); *see Krull*, 522 N.W. 2d at 612; *Kinseth*, Iowa District Court No. LACV022887, at *30. The valves "did not lose their status as improvements when they were permanently detached and refurbished." (*Id.* at 31); *see Kinseth*, 913 N.W. 2d at 64, 75.

Furthermore, Plaintiffs have introduced no evidence in the record that Thorne's alleged exposure occurred during installation of a new Crane Co. valve with asbestos-containing gaskets or component parts. Accordingly, to the extent that Thorne was exposed to asbestos from an asbestos-containing product during refurbishment of a Crane Co. valve, the valve having been previously attached to and part of a properly working hot water heating system for the requisite fifteen-year period, the exposure is within the ambit of Section 614.1(11). (*Id.* at 30-31) Thorne's claim against Crane Co. based upon his exposure to asbestos during the refurbishment process is barred by operation of the statute of repose. There is no evidence in the record that when Thorne refurbished the Crane Co. valves with asbestos-containing packing or gaskets, Crane Co. manufactured or sold the packing or gaskets. Therefore, the court recommends granting Crane Co.'s motion for summary judgment.

11

### b. Substantial Factor Causation

Should it be determined that Plaintiffs' claims are not barred by the statute of repose, there is no dispute of material fact sufficient to raise a reasonable inference that a Crane Co. product was a substantial factor in causing Thorne's injuries.

Under Iowa law, "a plaintiff in a products liability case must prove that the injury-causing product was a product manufactured or supplied by the defendant." *Kinseth*, Iowa District Court No. LACV022887, at *25 (quoting *Spaur v. Owens-Corning Fiberglas Corp.*, 510 N.W. 2d 854, 858 (Iowa 1994)). Iowa law requires that the plaintiff establish his exposure to asbestos from a particular product was a "substantial factor" in causing his injuries. *Id.* The Iowa Supreme Court in *Spaur* held that the "frequency, regularity and proximity" test adopted by the Fourth Circuit Court of Appeals in *Lohrmann v. Pittsburgh Corning Corp.* is "used to analyze the sufficiency of evidence needed to satisfy the substantial factor requirement," but that it is not "a rigid test with a minimum threshold level of proof required under each prong." *Spaur*, 510 N.W. 2d at 859; *see Lohrmann v. Pittsburgh Corning Corp.*, 782 F.2d 1156, 1163 (4th Cir. 1986). In determining substantial factor causation, courts consider: "(1) the nature of the product, (2) the frequency of its use, (3) the proximity, in distance and time, of a plaintiff to the use of a product, and (4) the regularity of the exposure of that plaintiff to the use of that product." *Spaur*, 510 N.W. 2d at 859 (citing *Eagle-Picher Indus., Inc. v. Balbos*, 604 A. 2d 445, 460 (Md. Ct. App. 1992).

Even if the court accepts that Thorne has sufficiently identified exposure to Crane Co. products during the course of his work at Minot, the Plaintiffs must show that a material issue of fact exists concerning whether such products were a substantial factor in causing their alleged

injuries. *See id.* at 858 (quoting *Mulcahy v. Eli Lilly & Co.*, 386 N.W. 2d 67, 72, 76 (Iowa 1986)).

As a preliminary matter, Plaintiffs do not recite the factors for substantial factor causation under *Spaur*, *supra*, nor do they apply the test to the facts of this case. *See id.* at 859. However, viewing the evidence in the light most favorable to the Plaintiffs, Crane Co. sold valves that contained asbestos gaskets and packing through the mid-1980s. (D.I. 60, Ex. 2 at 10:10-20, 63:17-23, 90:22-91:2; Ex. 3 at 22:10-20) Crane Co.'s brochures and catalogs listed asbestos packing and asbestos gaskets under the category of design data and features. (*Id.*, Ex. 2 at 84:11-86:22; Ex. 6 at 5) Executives of Crane Co. testified in other asbestos litigation that Crane Co. valves used gaskets and packing that contained asbestos. (*Id.*, Ex. 2 at 10:10-20, 63:17-23, 90:22-91:2; Ex. 3 at 7:17-8:1, 15:17-21, 20:4-9, 22:10-20) Based on the foregoing, Plaintiffs argue that it was foreseeable to Crane Co. that workers would have to cut, remove and replace asbestos packing and gaskets when working on Crane Co. valves. (D.I. 60 at 4) Furthermore, Plaintiffs argue that Crane Co. sold its own brand of replacement components, including asbestos sheet gaskets called "Cranite." (*Id.* at 4-5)

Here, however, aside from asserting generally that Crane Co. valves had asbestos components, the Plaintiffs have failed to show that Thorne was exposed to asbestos from an original Crane Co. valve or an asbestos-containing component manufactured or sold by Crane Co., or that a material issue of fact exists as to whether it was a substantial factor in causing his injuries. (D.I. 60 at 2-5, 11-18) Thorne's testimony does not support evidence of purchase of replacement parts from Crane Co. (*Id.*, Ex. 1 at 8-15) Thorne has not identified any insulation, packing or gasket materials made or sold by Crane Co. and used in the removal, repair or

13

replacement of Crane Co. valves. He never identified Cranite[5] as a product he used in refurbishment of Crane Co. valves at Minot. He testified that the replacement packing he used was made by Garlock. (*Id.* at 23:20-24:25, 26:3-9, 55:22-56:4, 210:22-213:6) He has offered no testimony to create a material issue of fact as to the frequency and regularity of his work with Crane Co. valves. Therefore, the court recommends granting Crane Co.'s motion for summary judgment.

### c. No Liability for Third Party Components

Setting aside the statute of repose and substantial factor causation, an independent statutory basis exists for granting Crane Co.'s motion for summary judgment. The Iowa Code insulates a defendant from liability in an asbestos action when the alleged harmful exposure is from a product or component made or sold by a third party. Iowa Code § 686B.7(5) ("A defendant in an asbestos action or silica action shall not be liable for exposures from a product or component part made or sold by a third party").

Plaintiffs acknowledged in their brief on choice of law that "[i]n Iowa, Defendants could not be held liable for the component parts, including gaskets, packing, and insulation recommended for, supplied, and utilized with their products." (D.I. 50 at 4) Plaintiffs have not addressed this statement in their answering brief on summary judgment and, instead, argue that Crane Co. should be liable for injuries caused by the foreseeable use of asbestos gaskets with Crane Co. valves. (D.I. 60 at 13-18) Plaintiffs have thus waived any argument regarding the Iowa statute's applicability to the instant case. *See Progressive Sterilization, LLC v. Turbett Surgical LLC*, 2020 WL 1849709, at *3 n.4 (D. Del. Apr. 13, 2020) ("Such arguments were not

---

[5] Cranite was a brand name of long fiber asbestos sheet gaskets produced for Crane Co. by Goodrich Goodwin Suite Rubber Company. (D.I. 60 at 4, Ex. 2 at 15:3-20) Crane Co. recommended Cranite for use with its hot water and steam valves. (*Id.*, Ex. 2 at 52:6-55:2, Ex. 4 at 5)

found in Plaintiff's answering brief (and should have been), …and thus, they are waived for purposes of resolving this motion"); *see also U.S. v. Fleetwood Enters., Inc.*, 689 F. Supp. 389, 392 (D. Del. 1988).

Furthermore, Plaintiffs have not cited to any facts in the record that Crane Co. was the manufacturer or seller of any of the component parts, e.g., insulation, rope packing, or gasket materials, that Thorne used in the removal, replacement or repacking of Crane Co. valves.

Plaintiffs' theory of liability for negligence in failing to warn of asbestos hazards and strict liability for a hazardous product rests upon a foreseeability test for which Plaintiffs have no current case authority under Iowa law. Rather, Plaintiffs predominately rely on New York and Virginia state and federal case law, along with several other jurisdictions noted in footnote 97 of Plaintiffs' answering brief. (D.I. 60 at 15-17, n.97) Plaintiffs have not cited to any Iowa case authority indicating that Iowa follows a foreseeability analysis in this instance. Instead, the concept of foreseeability is not applicable, here, where Iowa has specifically insulated manufacturers from liability for third party component parts. *See Beverage v. Alcoa, Inc.*, 958 N.W. 2d 611, at *3-4 (Iowa Ct. App. 2021). Thus, Iowa Code § 686B.7(5) bars Crane Co.'s liability on the instant record. Accordingly, the court recommends granting Crane Co.'s motion for summary judgment.

### d. Strict Liability

The court recommends that summary judgment be granted in favor of Crane Co. because Plaintiffs' foreseeability arguments discussed, *supra*, are contrary to Iowa law insulating manufacturers from liability for component parts made or sold by third parties. *See* Sections IV(b)-(c), discussed *supra*.

Iowa has adopted the Restatement (Third) of Torts that a product "is defective because of inadequate instructions or warnings when the foreseeable risks of harm posed by the product could have been reduced or avoided by the provision of reasonable instructions or warnings..." Restatement (Third) of Torts: Prod. Liab. § 2 (1998). The Iowa Supreme Court has held that there is "no real difference between strict liability and negligence principles in failure-to-warn cases." *Wright v. Brooke Group Ltd.*, 652 N.W. 2d 159, 167-169 (Iowa 2002); *see* Restatement (Third) of Torts: Prod. Liab. § 2 cmt. *n* ("The rules in this Section...are stated functionally rather than in terms of traditional doctrinal categories...such as negligence or strict liability").

Plaintiffs argue that based on the Restatement (Third) of Torts, Crane Co. had a duty to warn of the dangers of asbestos gaskets and packing manufactured by third parties because Crane Co. designed and recommended its valves be used with asbestos gaskets and packing, supplied the asbestos parts with its valves, and sold asbestos replacement gaskets. (D.I. 60 at 13-18) However, Plaintiffs make these arguments without pointing to anything in the record other than general conclusions derived from discovery in unrelated litigation with no citation in this record that Thorne's work on Crane Co. valves at Minot involved replacement packing and gaskets made or sold by Crane Co. Therefore, Plaintiffs do not make a showing of any evidence in the record to create a material issue of fact that would preclude summary judgment on this claim.

### e. Punitive Damages

The recommendations of the court in sections IV(a)-(c), *supra*, for entry of judgment as a matter of law in favor of Crane Co. render moot the Plaintiffs' claims for punitive damages.

Even if the Plaintiffs' claims for compensatory damages survived summary judgment, Plaintiffs have not shown that a material issue of fact exists concerning an award of punitive damages. Under Iowa law, the standard for awarding punitive damages is a "preponderance of

16

clear, convincing, and satisfactory evidence that the defendant's conduct amounted to a willful and wanton disregard for the rights or safety of another." *Kinseth*, 913 N.W. 2d at 78-79 (quoting *Beeman v. Manville Corp. Asbestos Disease Comp. Fund*, 496 N.W. 2d 247, 255 (Iowa 1993).

Plaintiffs argue only that Crane Co.'s knowledge of the dangers of asbestos as of the 1960s, if not the 1930s, demonstrates conscious indifference and willfulness in failing to warn users of asbestos hazards. (D.I. 60 at 18-20) However, the Plaintiffs have not pointed to any evidence in the record sufficient to create a material issue of fact as to whether the Defendant acted with malice or reckless disregard for the safety of Thorne.

### f. Loss of Consortium

Under Iowa law, an independent claim for loss of consortium will not survive if the Defendant is not liable as a matter of law for the underlying claims of the injured spouse. *See Kelly v. Ethicon, Inc.*, 511 F. Supp. 3d 939, 955-956 (N.D. Iowa 2021). Thorne's spouse is in no better position than Thorne and has not demonstrated any issues of material fact precluding dismissal of her claim. For the reasons discussed in sections IV(a)-(c), *supra*, the court recommends dismissing the loss of consortium claim as a matter of law.

### g. Causes of Action Not Addressed in Plaintiffs' Answering Brief

#### i. Misrepresentation and Concealment

The court recommends that summary judgment be granted in favor of Crane Co. because Plaintiffs do not address Crane Co.'s argument with respect to the misrepresentation and concealment counts, thus, any opposition is waived. (D.I. 56 at 13-14; *see* D.I. 60); *see Progressive Sterilization*, 2020 WL 1849709, at *3 n.4; *see also Fleetwood Enters.*, 689 F. Supp.

17

at 392. The court recommends granting Crane Co.'s motion for summary judgment on these counts.

### ii. Conspiracy

The court recommends that summary judgment be granted in favor of Crane Co. because Plaintiffs do not address Crane Co.'s argument with respect to the conspiracy count, thus, any opposition is waived. (D.I. 56 at 14; *see* D.I. 60); *see Progressive Sterilization*, 2020 WL 1849709, at *3 n.4; *see also Fleetwood Enters.*, 689 F. Supp. at 392. The court recommends granting Crane Co.'s motion for summary judgment on this count.

## V. CONCLUSION

For the foregoing reasons, the court recommends GRANTING Crane Co.'s motion for summary judgment. (D.I. 55)

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b)(2). The objections and responses to the objections are limited to ten (10) pages each. The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the District Court. *See Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006); *Henderson v. Carlson*, 812 F.2d 874, 878–79 (3d Cir. 1987).

The parties are directed to the court's Standing Order For Objections Filed Under Fed. R. Civ. P. 72, dated March 7, 2022, a copy of which is available on the court's website, http://www.ded.uscourts.gov.

Dated: June 16, 2022

Sherry R. Fallon
United States Magistrate Judge